IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| MICHAEL BENEDICT | Civil Action No. |
| Plaintiff, | |
| v. | |
| EXPERIAN INFORMATION SOLUTIONS, INC, EQUIFAX INFORMATION SERVICES, LLC, and TRANSUNION, LLC | JURY TRIAL DEMANDED |
| Defendants. | |

## COMPLAINT

NOW comes the Plaintiff, MICHAEL BENEDICT (hereinafter the "Plaintiff"), through their Counsel of record to make their allegations known against the Defendants by and through their complaint that alleges the following:

## PRELIMINARY STATEMENT

1. This is an action for actual, statutory, and punitive damages, costs, and attorneys' fees pursuant to 15 U.S.C. §1681 et seq. (Fair Credit Reporting Act).

2. Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to Plaintiff or Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

3. While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

1

4. All violations by the Defendants were knowing, reckless, willful, and intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violations.

5. Unless otherwise indicated, the use of a Defendant's name in this Complaint includes all agents, principles, managing agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, subsidiaries, shell corporations, D/B/As and insurers of those Defendants named in this Complaint.

## JURISDICTION AND VENUE

6. Jurisdiction of this Court is conferred by 15 U.S.C. §1681(p) and 28 U.S.C. §1331.

7. Venue in this District is appropriate under 28 U.S.C. §1391(b).

## PARTIES

8. Plaintiff is a natural person and a "consumer", as defined by 15 U.S.C. § 1681a(c).

9. Defendant, Experian Information Solutions, Inc (hereinafter Experian) is a For-Profit Corporation that is registered to do business in Texas and has a registered agent in Texas. Experian has its major processing center in the Eastern District of Texas. Defendant is a "consumer reporting agency," as defined by 15 U.S.C. §1681a(f), and is engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined by 15 U.S.C. §1681a(d), to third parties.

10. Defendant, Equifax Information Services, LLC, (hereinafter Equifax) is a Foreign For-Profit Limited Liability Company registered to do business in Texas and with a registered agent in Texas. Defendant is a "consumer reporting agency," as defined by 15 U.S.C. § 1681a(f), and is engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined by 15 U.S.C. § 1681a(d),

to third parties. Based on information and belief, Equifax is reporting consumer credit files on over one million consumers in the Eastern District of Texas.

11. Defendant, TransUnion, LLC, (hereinafter TransUnion) is a Foreign For-Profit Limited Liability Company registered to do business in Texas and with a registered agent in Texas. Defendant is a "consumer reporting agency," as defined by 15 U.S.C. § 1681a(f), and is engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined by 15 U.S.C. § 1681a(d), to third parties. Based on information and belief, TransUnion is reporting consumer credit files on over one million consumers in the Eastern District of Texas.

## FACTUAL ALLEGATIONS

12. Plaintiff incorporates by reference all the foregoing paragraphs as though the same were set forth at length herein.

13. On March 8, 2020, Plaintiff ordered furniture at the Lake Jackson, Texas, furniture store for his elderly parents totaling $2828.08. There was a delivery planned to occur within a few weeks of Plaintiff's purchase.

14. The only item that Plaintiff received from this transaction was a piece of wall art that Plaintiff took home with him from the store on the day the purchase was made. The additional furniture that was purchased was never delivered and the furniture store never contacted Plaintiff.

15. Plaintiff called the furniture store and was told that the store was closed due to COVID-19. Later, in April 2020, Plaintiff received a bill for $69.66, which was the price of the wall art. Plaintiff made the payment by phone, closing out the account.

16. The following month, on or around May 2020, Plaintiff received another invoice from the furniture company for $2,722. Plaintiff was under the impression that the account had already been closed out when he paid the invoice for the wall art a month prior. Plaintiff did not make a payment on the furniture invoice because Plaintiff never received the furniture as agreed.

17. As a result of Plaintiff not making a payment on the account due to not receiving the agreed upon goods, late fees in the amount of $38 per month began accruing on the account.

18. Later, on or around August 2020, the account was credited in the amount of $2466.17, however, an additional purchase of $108.24 was added to the account, along with another $38 late fee. At this point, the balance on the account was $409.25.

19. After looking into the $108.24 charge, Plaintiff was told that this charge was for a mattress pad that was picked up from the store in Lake Jackson, Texas, on July 15, 2020. Plaintiff was not in Lake Jackson on this date. Instead, Plaintiff was at work in Austin, approximately four (4) hours away from Lake Jackson, on this date.

20. On information and belief, the $108.24 charge was erroneously added to the account when the account was being credited for the furniture purchase that was never delivered.

21. After multiple unsuccessful attempts at having the issue addressed by the furniture company, the account began reporting negatively on Plaintiff's credit reports, ultimately being reported as a charge off, to the great detriment of Plaintiff's credit.

22. The Credit Reporting Agencies' reporting of the account as a charge off is inaccurate because the account never should have been reported with a balance. Plaintiff paid for the only item they received from the store, which was the wall art Plaintiff paid for upon receipt of the corresponding invoice. The balance on the furniture account should have been $0, as the account should have been credited in full when the furniture was never delivered to Plaintiff. The account

never should have been reported with a balance, and therefore, never should have been reported by any credit reporting agency as a charge off.

23. Plaintiff disputed the inaccurate account via dispute packages mailed by USPS certified mail and sent directly to Equifax, Experian, and TransUnion. Plaintiff's dispute packages included detailed and thorough dispute letters dated February 29, 2024, as well as copies of Plaintiff's driver's license for identification verification. Plaintiff's driver's license address matched the address on each dispute letter.

24. Plaintiff's Equifax dispute package was delivered and signed for by an Equifax employee whose name is illegible on the USPS return receipt on March 11, 2024. Plaintiff's TransUnion dispute package was delivered and signed for by a TransUnion employee named Alfredo Hewitt on March 12, 2024. Plaintiff's Experian dispute package was delivered and signed for by an Experian employee named James Swanson on March 14, 2024.

25. In response to their Equifax dispute, Plaintiff received dispute results dated March 29, 2024, indicating that it had verified the inaccurate account as correct.

26. Plaintiff later viewed their TransUnion credit report dated April 25, 2024, and found that TransUnion continued its reporting of the inaccurate account with an inaccurate and negative status of ">Account paid in Full was a Charge-off<."

27. Plaintiff later viewed their Experian credit report dated April 17, 2024, and found that Experian continued its reporting of the inaccurate account with an inaccurate and negative status of "Paid, Closed. $339 written off."

28. Experian, TransUnion, and Equifax reported inaccurate, negative credit information on Plaintiff's credit file and credit report and continued their inaccurate and negative reporting after receipt and processing of Plaintiff's dispute.

29. The inaccurate account Plaintiff disputed is:

    a. TD RCS/ Hill Country Furniture Account #XXXXXXXXXXXX5970

***Damages***

30. Defendants' inaccurate reporting has caused past, current, and future actual damages to Plaintiff and will continue to cause damages for an unknown period of time. The inaccurate account being reported has a negative effect on Plaintiff's credit reputation, credit worthiness, and credit scores, and Plaintiff's overall borrowing power is severely damaged. In short, Plaintiff's credit was destroyed. Plaintiff is entitled to an accurate credit file/report.

31. As a result of Defendants' violations of the FCRA, which are listed above, Plaintiff is entitled to actual, statutory, and punitive damages along with their attorney's fees and costs in this matter. Defendants, as defined above, conducted themselves in a manner that they acted willfully, intentionally, recklessly, and/or negligently in their actions related to Plaintiff and therefore Plaintiff is entitled to actual, statutory, and punitive damages along with their attorneys' fees and costs in this matter.

32. The conduct of Defendants was a direct and/or proximate cause, as well as a substantial factor in, and/or a producing cause bringing about the serious injuries, damages, and harm that Plaintiff has suffered and continues to suffer as of the filing of this complaint. Plaintiff expects their damages caused by Defendants to continue to accrue and be ongoing until they are made whole again if that ever occurs.

33. Defendants, due to their conduct, are liable to compensate Plaintiff for the full amount of actual, statutory, compensatory, and punitive damages, as well as, such other relief, permitted by law to compensate. Plaintiff has suffered the following types of damages due to the previously described conduct of Defendants:

    a.   Physical manifestations of mental anguish, humiliation, embarrassment, and anxiety. Plaintiff's stress, anxiety, and mental anguish have caused Plaintiff frequent loss of sleep. Plaintiff's damages are significant, continuing, and ongoing.

    b.   Emotional damages in the form of mental anguish, humiliation, and embarrassment. The inaccurate reporting has caused Plaintiff to feel anxious in their everyday life and when making decisions. Plaintiff has also suffered from depression. Plaintiff has experienced debilitating stress, anxiety, and depression as a result of Defendants' conduct. Plaintiff's damages are significant, continuing, and ongoing.

    c.   Damages to Plaintiff's credit worthiness, credit reputation, and borrowing power. Plaintiff's damages are significant, continuing, and ongoing.

34. Plaintiff's damages caused by and through the conduct of Defendants are more specifically described as follows:

    a.   Emotional damages in the form of mental anguish, humiliation, embarrassment, depression and anxiety.

    b.   Physical manifestations of stress and anxiety, including loss of sleep.

    c.   Financial damages including damages to Plaintiff's creditworthiness, credit reputation, and borrowing power.

35. All of Plaintiff's damages have led to their great detriment and loss and were caused by and are continuing due to the above-described conduct of Defendants.

## CAUSES OF ACTION

36. Plaintiff incorporates by reference the foregoing paragraphs and footnotes as though the same were set forth at length herein.

37. This suit is based upon the Defendants' violations of the Fair Credit Reporting Act (FCRA). All causes of action were the proximate, substantial factor in, and/or producing causes of damages which Plaintiff has suffered.

## COUNT I-VIOLATION OF THE FAIR CREDIT REPORTING ACT

38. Plaintiff incorporates by reference the foregoing paragraphs as though the same were set forth at length herein.

39. This suit is brought against all Defendants as Plaintiff's damages that are the basis of this lawsuit were caused by Defendants' violations of the FCRA. In all instances of violating the FCRA, Defendants' conduct was willful, intentional, reckless, and/or negligent. Under, 15 U.S.C. §1681n and §1681o, Plaintiff is entitled to recover statutory damages, actual damages, punitive damages, and reasonable attorneys' fees.

> 15 U.S.C. §1681n, "Civil Liability for willful noncompliance" reads:
>
> > (a) Any person who willfully fails to comply with any requirement imposed under this title with respect to any consumer is liable to that consumer in an amount equal to the sum of
> > (1) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1000
> > (2) such amount of punitive damages as the court may allow; and
> > (3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorneys fees as determined by the court.
>
> And, 15 U.S.C. §1681o, "Civil Liability for negligent noncompliance" reads:
>
> > (a) Any person who is negligent in failing to comply with any requirement imposed under this title with respect to any consumer is liable to that consumer in an amount equal to the sum of:
> >
> > (1) any actual damages sustained by the consumer as a result of the

failure; and

(2) in the case of any successful action to enforce any liability under this section, the costs of the action with reasonable attorney's fees as determined by the court.

### *Experian's FCRA Violations*

40. After Plaintiff discovered the inaccurate credit reporting and that the inaccurate account was placed on Plaintiff's Experian credit report, Plaintiff mailed a dispute letter directly to Experian via USPS certified mail.

41. Plaintiff's dispute package to Experian included a detailed and thorough dispute letter dated February 29, 2024, as well as a copy of their driver's license for identification verification.

42. Plaintiff's Experian dispute package was delivered and signed for by an Experian employee named James Swanson on March 14, 2024.

43. On April 17, 2024, Plaintiff viewed their Experian credit report and found that Experian had continued to report the disputed account with an inaccurate and negative status of "Paid, Close. $339 written off."

44. Experian violated its duty under 15 U.S.C. §1681i(a)(1)(A) by failing to conduct a reasonable, good faith investigation into Plaintiff's notice of dispute. Based on the facts, information and allegations within the complaint, Experian willfully, intentionally, recklessly, and/or negligently violated this section of the FCRA.

45. Experian violated its duty under 15 U.S.C. §1681i(a)(4) by failing to review and consider the documents that Plaintiff attached to the dispute letter. Based on the facts, information and allegations within the complaint, Experian willfully, intentionally, recklessly, and/or negligently violated this section of the FCRA.

46. Experian violated its duty under 15 U.S.C. §1681i(a)(5) by failing to delete or correct the inaccurate information that was disputed. Based on the facts, information and allegations within

the complaint, Experian willfully, intentionally, recklessly, and/or negligently violated this section of the FCRA.

47. The fact that Experian continued its reporting of the inaccurate information on Plaintiff's credit profiles/credit reports is proof that Experian failed to conduct a reasonable investigation, failed to properly review and consider the attached documents, and failed to delete or correct the inaccurate information on more than one occasion.

15 U.S.C. §1681i(a)(1)(A) reads:

> (a) Reinvestigations in case disputed information
>
> (1) Reinvestigation required
>
>> (A) In general-- Subject to subjection (f), if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30 day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

And;

15 U.S.C. §1681i(a)(4) reads:

> (4) Consideration of consumer information. In conducting any reinvestigation under paragraph (1) with respect to disputed information in the file of any consumer, the consumer reporting agency shall review and consider all relevant information submitted by the consumer in the period described in paragraph (1)(A) with respect to such disputed information.

And;

15 U.S.C. §1681i(a)(5) reads:

> (5) Treatment of Inaccurate or Unverifiable Information

>   (A) *In general*. If, after any reinvestigation under paragraph (1) of any information disputed by a consumer, an item of the information is found to be inaccurate or incomplete or cannot be verified, the consumer reporting agency shall-
>
>   (i) promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation; and
>
>   (ii) promptly notify the furnisher of that information that the information has been modified or deleted from the file of the consumer

48. Experian is currently violating 15 U.S.C. §1681e(b), when it failed to follow reasonable procedures to assure maximum accuracy of the information, they reported on Plaintiff's credit report/file. Based on the facts, information and allegations within the complaint, Experian willfully, intentionally, recklessly, and negligently violated this section of the FCRA.

49. If Experian had implemented reasonable procedures to assure maximum accuracy, they would have either deleted and/or blocked the inaccurate information after being notified of the problem from Plaintiff's detailed dispute letter along with documents that prove the information is inaccurate.

>   15 U.S.C. §1681e(b) reads as follows:
>
>   (a) Accuracy of the Report
>
>   Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures as assure maximum possible Accuracy of the information concerning the individual about whom the report relates.

50. Experian's inaccurate reporting has caused past, current, and future actual damages to Plaintiff and will continue to cause damages for an unknown period of time. The inaccurate account being reported has a negative effect on Plaintiff's credit reputation, credit worthiness, and

credit scores, and Plaintiff's overall borrowing power is severely damaged. In short, Plaintiff's credit was destroyed. Plaintiff is entitled to an accurate credit file/report.

51. As a result of Experian's violations of the FCRA, which are listed above, Plaintiff is entitled to actual, statutory, and punitive damages along with their attorneys' fees and costs in this matter. Experian, as defined above, conducted itself in a manner that it acted willfully, intentionally, recklessly, and/or negligently in its actions related to Plaintiff and therefore Plaintiff is entitled to actual, statutory, and punitive damages along with their attorneys' fees and costs in this matter.

52. The conduct of Experian was a direct and/or proximate cause, as well as a substantial factor in, and/or a producing cause bringing about the serious injuries, damages, and harm that Plaintiff has suffered and continues to suffer as of the filing of this complaint. Plaintiff expects their damages caused by Experian to continue to accrue and be ongoing until they are made whole again if that ever occurs.

53. Plaintiff's damages attributable to Experian are described in detail in paragraphs 21-26 above.

54. Plaintiff's damages attributable to Experian are serious, continuing, and ongoing.

*Trans Union's FCRA Violations*

55. After Plaintiff discovered the inaccurate credit reporting and that the inaccurate account was placed on Plaintiff's TransUnion credit report, Plaintiff mailed a dispute letter directly to TransUnion via USPS certified mail.

56. Plaintiff's dispute package to TransUnion included a detailed and thorough dispute letter dated February 29, 2024, as well as a copy of their driver's license for identification verification.

57. Plaintiff's TransUnion dispute package was delivered and signed for by a TransUnion employee named Alfredo Hewitt on March 12, 2024.

58. Plaintiff later viewed their TransUnion credit report dated April 25, 2024, and found that TransUnion continued its reporting of the inaccurate account with an inaccurate and negative status of ">Account paid in Full was a Charge-off<."

59. TransUnion violated its duty under 15 U.S.C. §1681i(a)(1)(A) by failing conduct a reasonable investigation into Plaintiff's notice of dispute. Based on the facts, information and allegations within the complaint, TransUnion willfully, intentionally, recklessly, and/or negligently violated this section of the FCRA.

60. TransUnion violated its duty under 15 U.S.C. §1681i(a)(4) by failing to review and consider the documents that Plaintiff attached to the dispute letter. Based on the facts, information and allegations within the complaint, Trans Union willfully, intentionally, recklessly, and/or negligently violated this section of the FCRA.

61. TransUnion violated its duty under 15 U.S.C. §1681i(a)(5) by failing to delete or correct the inaccurate information that was disputed. Based on the facts, information and allegations within the complaint, TransUnion willfully, intentionally, recklessly, and/or negligently violated this section of the FCRA.

62. The fact that TransUnion is currently reporting inaccurate information on Plaintiff's credit profiles/credit reports is proof that TransUnion failed to conduct a reasonable investigation, failed to properly review and consider the attached documents, and failed to delete or correct the inaccurate information.

15 U.S.C. §1681i(a)(1)(A) reads:

   (a)  Reinvestigations in case disputed information

(1) Reinvestigation required

(A) In general-- Subject to subjection (f), if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30 day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

And;

15 U.S.C. §1681i(a)(4) reads:

(4) Consideration of consumer information. In conducting any reinvestigation under paragraph (1) with respect to disputed information in the file of any consumer, the consumer reporting agency shall review and consider all relevant information submitted by the consumer in the period described in paragraph (1)(A) with respect to such disputed information.

And;

16 U.S.C. §1681i(a)(5) reads:

(5) Treatment of Inaccurate or Unverifiable Information

(A) *In general*. If, after any reinvestigation under paragraph (1) of any information disputed by a consumer, an item of the information is found to be inaccurate or incomplete or cannot be verified, the consumer reporting agency shall-

(iii) promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation; and

(iv) promptly notify the furnisher of that information that the information has been modified or deleted from the file of the consumer

63. TransUnion violated 15 U.S.C. §1681e(b), when it failed to follow reasonable procedures to assure maximum accuracy of the information, it reported on Plaintiff's credit reports. Based

on the facts, information and allegations within the complaint, TransUnion willfully, intentionally, recklessly, and negligently violated this section of the FCRA.

64. If TransUnion had implemented reasonable procedures to assure maximum accuracy, they would have either deleted and/or blocked the inaccurate information after being notified of the problem from Plaintiff's detailed dispute letter along with documents that prove the information is inaccurate.

15 U.S.C. §1681e(b) reads as follows:

(b) Accuracy of the Report

Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures as assure maximum possible Accuracy of the information concerning the individual about whom the report relates.

65. TransUnion's inaccurate reporting has caused past, current, and future actual damages to Plaintiff and will continue to cause damages for an unknown period of time. The inaccurate account being reported has a negative effect on Plaintiff's credit reputation, credit worthiness, and credit scores, and Plaintiff's overall borrowing power is severely damaged. In short, Plaintiff's credit was destroyed. Plaintiff is entitled to an accurate credit file/report.

66. As a result of TransUnion's violations of the FCRA, which are listed above, Plaintiff is entitled to actual, statutory, and punitive damages along with their attorneys' fees and costs in this matter. TransUnion, as defined above, conducted itself in a manner that it acted willfully, intentionally, recklessly, and/or negligently in its actions related to Plaintiff and therefore Plaintiff is entitled to actual, statutory, and punitive damages along with their attorneys' fees and costs in this matter.

67. The conduct of TransUnion was a direct and/or proximate cause, as well as a substantial factor in, and/or a producing cause bringing about the serious injuries, damages, and harm that

Plaintiff has suffered and continues to suffer as of the filing of this complaint. Plaintiff expects their damages caused by TransUnion to continue to accrue and be ongoing until they are made whole again if that ever occurs.

68. Plaintiff's damages attributable to TransUnion are described in detail in paragraphs 21-26 above.

69. Plaintiff's damages attributable to TransUnion are serious, continuing and ongoing.

### *Equifax's FCRA Violations*

70. After Plaintiff discovered the inaccurate credit reporting and that the inaccurate account was placed on Plaintiff's Equifax credit report, Plaintiff mailed a dispute letter directly to Equifax via USPS certified mail.

71. Plaintiff's dispute package to Equifax included a detailed and thorough dispute letter dated February 29, 2024, as well as a copy of their driver's license for identification verification.

72. Plaintiff's Equifax dispute package was delivered and signed for by an Equifax employee whose name is illegible on the USPS return receipt on March 11, 2024.

73. In response to their Equifax dispute, Plaintiff received dispute results dated March 29, 2024, indicating that it had verified the inaccurate account as correct.

74. Equifax violated its duty under 15 U.S.C. §1681i(a)(1)(A) by failing conduct a reasonable investigation into Plaintiff's notice of dispute. Based on the facts, information and allegations within the complaint, Equifax willfully, intentionally, recklessly, and/or negligently violated this section of the FCRA.

75. Equifax violated its duty under 15 U.S.C. §1681i(a)(4) by failing to review and consider the documents that Plaintiff attached to the dispute letter. Based on the facts, information and

16

allegations within the complaint, Equifax willfully, intentionally, recklessly, and/or negligently violated this section of the FCRA.

76. Equifax violated its duty under 15 U.S.C. §1681i(a)(5) by failing to delete or correct the inaccurate information that was disputed. Based on the facts, information and allegations within the complaint, Equifax willfully, intentionally, recklessly, and/or negligently violated this section of the FCRA.

77. The fact that Equifax continued reporting inaccurate information on Plaintiff's credit profiles/credit reports is proof that Equifax failed to conduct a reasonable investigation, failed to properly review and consider the attached documents, and failed to delete or correct the inaccurate information.

> 15 U.S.C. §1681i(a)(1)(A) reads:
>
> > (a) Reinvestigations in case disputed information
> >
> > (1) Reinvestigation required
> >
> > > (A) In general-- Subject to subjection (f), if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30 day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.
>
> And;
>
> 15 U.S.C. §1681i(a)(4) reads:
>
> > (4) Consideration of consumer information. In conducting any reinvestigation under paragraph (1) with respect to disputed information in the file of any consumer, the consumer reporting agency shall review and consider all relevant information submitted by the consumer in the period described in paragraph (1)(A)

17

with respect to such disputed information.

And;

17 U.S.C. §1681i(a)(5) reads:

(5) Treatment of Inaccurate or Unverifiable Information

(A)*In general*. If, after any reinvestigation under paragraph (1) of any information disputed by a consumer, an item of the information is found to be inaccurate or incomplete or cannot be verified, the consumer reporting agency shall-

> (v) promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation; and
>
> (vi) promptly notify the furnisher of that information that the information has been modified or deleted from the file of the consumer

78. Equifax violated 15 U.S.C. §1681e(b), when it failed to follow reasonable procedures to assure maximum accuracy of the information, it reported on Plaintiff's credit reports. Based on the facts, information and allegations within the complaint, Equifax willfully, intentionally, recklessly, and negligently violated this section of the FCRA.

79. If Equifax had implemented reasonable procedures to assure maximum accuracy, they would have either deleted and/or blocked the inaccurate information after being notified of the problem from Plaintiff's detailed dispute letter along with documents that prove the information is inaccurate.

15 U.S.C. §1681e(b) reads as follows:

(c) Accuracy of the Report

Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures as assure maximum possible Accuracy of the information concerning the individual about whom the report relates.

80. Equifax's inaccurate reporting has caused past, current, and future actual damages to Plaintiff and will continue to cause damages for an unknown period of time. The inaccurate account being reported has a negative effect on Plaintiff's credit reputation, credit worthiness, and credit scores, and Plaintiff's overall borrowing power is severely damaged. In short, Plaintiff's credit was destroyed. Plaintiff is entitled to an accurate credit file/report.

81. As a result of Equifax's violations of the FCRA, which are listed above, Plaintiff is entitled to actual, statutory, and punitive damages along with their attorneys' fees and costs in this matter. Equifax, as defined above, conducted itself in a manner that it acted willfully, intentionally, recklessly, and/or negligently in its actions related to Plaintiff and therefore Plaintiff is entitled to actual, statutory, and punitive damages along with their attorneys' fees and costs in this matter.

82. The conduct of Equifax was a direct and/or proximate cause, as well as a substantial factor in, and/or a producing cause bringing about the serious injuries, damages, and harm that Plaintiff has suffered and continues to suffer as of the filing of this complaint. Plaintiff expects their damages caused by Equifax to continue to accrue and be ongoing until they are made whole again if that ever occurs.

83. Plaintiff's damages attributable to Equifax are described in detail in paragraphs 21-26 above.

84. Plaintiff's damages attributable to Equifax are serious, continuing and ongoing.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests a trial by jury and seeks a judgment in Plaintiff's favor against Defendants based on the following requested relief:

a. Actual and compensatory damages pursuant to 15 U.S.C. §1681;

b. Statutory damages pursuant to 15 U.S.C. §1681;

c. Punitive damages pursuant to 15 U.S.C. §1681;

d. Costs and reasonable attorneys' fees pursuant to 15 U.S.C. §1681n, §1681o; and

e. Such other and further relief as may be necessary, just and proper.

Dated June 17, 2024

    Respectfully Submitted,

*/s/Kyle Kaufman*
Kyle Kaufman
ATTORNEY FOR PLAINTIFF
Louisiana Bar Roll No. 39232
Raburn Kaufman, LLC
8570 Anselmo Lane
Baton Rouge, Louisiana 70810
kkaufman@raburnkaufman.com
Telephone: 225-412-2777

*/s/Jonathan Raburn*
Jonathan Raburn
ATTORNEY FOR PLAINTIFF
Louisiana Bar Roll No. 28728
Raburn Kaufman, LLC
8570 Anselmo Lane
Baton Rouge, Louisiana 70810
jraburn@raburnkaufman.com
Telephone: 225-412-2777